IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA,
TAMPA DIVISION

STEPHEN BALOGA, ROBERT
BAME, et al.,

       Plaintiffs,

Vs.

LAWRENCE W. MAXWELL,
et al.,

       Defendants.

_____/

Case No. 8:19-cv-02936-CEH-AAS
Class Action Representation
And Demand For Jury Trial
Injunctive Relief Sought

## Class Action Settlement Agreement

This Class Action Settlement Agreement is entered into by and among the:

(i)    Plaintiffs Stephen Baloga, Robert Bame, James R. Campbell, James Campbell, Linda Davy, Gerald Kruithoff, Richard Mansfield, Jane Petersen, James Rotter, Robert Tattersall, and Katherine Wimer,[1] on behalf of themselves, the class of current and former homeowners in the Vienna Square Community and all others similarly situated (collectively, "Putative Class Representatives", unless otherwise noted);

(ii)    the Settlement Class;

(iii)    Defendants Lawrence W. Maxwell ("Maxwell"), Century Realty Funds, Inc. ("CRFI"), CRF Management Co., Inc. (CRF Management), MX

_____

[1]    Plaintiff Robert Schwegler passed away in November 2020. A Suggestion of Death is being filed contemporaneously.

Communication Services, LLC ("MX Communication Services"), (collectively, "Maxwell Defendants");

(iv)    Mark E. Schreiber ("Schreiber"), David Scott Owens ("Owens"), Baytree Partners, LLC ("Baytree Partners"), Century Residential, LLC ("Century Residential") (collectively, "Schreiber Defendants"); (v) Vienna Square Homeowners' Association, Inc. ("HOA"), The Villas At Vienna Square Homeowners' Association, Inc., ("Villas HOA") (collectively, "Association Defendants"); and

(v)     Ronald L. Clark ("Clark"), Craig B. Hill ("Hill"), and Clark, Campbell, Lancaster & Munson, P.A., f/k/a Clark, Campbell & Lancaster, P.A., f/k/a Clark, Campbell, Mawhinney & Lancaster, P.A., f/k/a Clark, Campbell & Mawhinney, P.A., f/k/a Clark & Campbell, P.A. ("Clark Campbell Law Firm") (collectively, "Attorney Defendants"). The Putative Class Representatives,[2] Settlement Class, and Defendants are collectively referred to as "the Parties".

This Agreement is intended by the Parties to fully, finally and forever resolve and settle the Released Claims, upon and subject to the terms and conditions of this Agreement and final approval of this Agreement by the Court.

---

[2]    Plaintiffs are referred to collectively as "Putative Class Representatives" because, as of the date of this Agreement, no class has as yet been certified by the Court.

## Recitals

A.      On November 27, 2019, Putative Class Representatives filed a pleading styled as a "Class Action Complaint Representation and Demand for Jury Trial – Injunctive Relief Sought" (Dkt. 1[3]) in the United States District Court for the Middle District of Florida, Case No. 8:19-cv-029363-CEH-AAS ("the Action") "on behalf of themselves, the class of current [and] former homeowners in the Community and all others similarly situated", (Dkt. 1, Preamble).

B.      Putative Class Representatives alleged in the Complaint that the Plaintiffs "are elderly retiree homeowners who were solicited by Defendants to visit and purchase site-built homes in the Polk County subdivision known as Vienna Square." (Dkt. 1, ¶ 7).

C.      The homeowners associations in the Vienna Square Community, the HOA and the Villas HOA, remain under the control of Baytree Partners.

D.      In seven separate Counts, Putative Class Representatives variously sought class certification, damages (including compensatory, statutory treble damages and punitive damages), declaratory and injunctive relief, other statutory relief, attorney's fees, and trial by jury.

E.      The "System Assessment" referenced and in issue in the Complaint is the so-called "System Assessment" for cable television and home security services payable to MX Communications Services, identified and described in Section 9.8

---

3       "Dkt." refers to the docket number of the of the referenced document in the Federal Action.

of that certain "Master Declaration of Covenants, Conditions and Restrictions for Vienna Square December 1, 2006", which was recorded at OR Book 07080, Pages 2010, *et seq.*, in the Public Records of Polk County, Florida ("Master Declaration"), as the Master Declaration has been amended.

F.     Putative Class Representatives alleged in their Complaint that: Maxwell Defendants, Schreiber Defendants and Association Defendants, with the assistance and complicity of Attorney Defendants, established in the Master Declaration a perpetual assessment for payments for cable television and security services that homeowners could never cancel or avoid paying, even after turnover; this arrangement was disguised in the Master Declaration and related sales and conveying contracts and documents; the inclusion of the System Assessment in the Master Declaration violated the public policy of the State of Florida as expressed in § 720.3075(1) and (5), *Fla. Stat.*; and the System Assessment, together with the means established in the Master Declaration to enforce it, were illegal and unenforceable. Putative Class Representatives acknowledge that on October 5, 2017, the System Assessment was no longer mandatory as memorialized in Section 2.0 of the Fifth Amendment to the Master Declaration Covenants, Conditions and Restrictions for Vienna Square, executed effective December 26, 2017 by the HOA, the Villas HOA, MX Communication Services, and Baytree Partners, and recorded at Book 10354 Pages 0478-0486, Public Records of Polk County, Florida.

G.      Putative Class Representatives further alleged that the Vienna Square Community was falsely described as a "Continuing Care Campus" and as "Maintenance Free", that "community funds" were "concealed" by "fraudulent accounting". Putative Class Representatives (*See, e.g.*, Dkt 1, Par. 2). Putative Class Representatives, moreover, alleged that the Clubhouse and other common areas of the Vienna Square Community were inaccessible to "disabled persons" in violation of the Americans With Disabilities Act and related state statute. (*See, generally*, Dkt. 1, Count VII, and Pars. 81 – 83.)

H.      On February 28, 2020, Maxwell Defendants and Association Defendants jointly filed their "Answer and Affirmative Defenses" (Dkt. 9) denying and disputing the material allegations of Putative Class Representatives' Complaint, and asserting numerous affirmative defenses both as to Putative Class Representatives' claim for class certification and Putative Class Representatives' substantive claims.

I.      On March 2, 2020, Attorney Defendants separately filed their "Answer and Affirmative Defenses" (Dkt. 10). Attorney Defendants denied and disputed the material allegations of Putative Class Representatives' Complaint, and asserted numerous affirmative defenses both as to Putative Class Representatives' claim for class certification and Putative Class Representatives' substantive claims. Attorney Defendants also filed, with leave of court, an Amended Answer and Affirmative Defenses (Dkt. 24) that raised additional

defense to Plaintiffs' substantive claims.

J.      On April 28, 2020, Putative Class Representatives filed their motion for Class Certification (Dkt. 18), which motion Defendants, and each of them, opposed. (Dkt. 33 and Dkt. 39. A hearing on this Motion was held on October 22, 2020, at the conclusion of which the Court took the Motion under advisement (Dkt. 46).

K.      On November 3, 2020, the Court granted (Dkt. 48) the Parties' Joint Motion for a Limited Stay of the Action (Dkt. 47), to allow the Parties to conduct voluntary mediation.

L.      Putative Class Representatives and Defendants through their respective attorneys and party representatives voluntarily mediated their dispute on November 18, 2020. Notwithstanding that Defendants strongly deny and dispute the Putative Class Representatives' claims and each of them, the Parties were successful in reaching an agreement on the material terms of a settlement leading to this Agreement (Mediation Report, Dkt. 50).

M.      As part of the Settlement the Parties have agreed that the Action will be dismissed with prejudice upon the terms below.

N.      All Parties have stipulated that any and all such claims as have been alleged in the Action or that could have been alleged in the Action are permanently withdrawn in full by Putative Class Representatives and shall be dismissed by the Court with prejudice. None of the Parties will seek sanctions

against any other Party or Parties or their respective counsels under Rule 11, *Fed.R.Civ.P.*, or attorney's fees or costs.

O.    Taking into consideration and account the uncertainty and significant risks in and attending any litigation, including the Action, the Parties, and each of them, acknowledge and agree that continued litigation of the Action at the trial, appellate and any post-judgment levels will be protracted burdensome, expensive, and that it is desirable and beneficial to all Parties that the Action be fully and finally settled and terminated in the manner and upon the terms and conditions set forth in this Agreement. This Agreement therefore represents a compromise, and this Agreement and any related documents generated or executed by any party or parties, any written or verbal negotiations resulting in this Agreement, and any actions or forbearance taken or forborne under this Agreement, shall not in any way be construed or deemed to be evidence of, or any admission or concession of, liability or wrongdoing on the part of the Defendants, or any of them, or by any of the Defendant Releasees (who are defined in Subsection 5.1, below), with respect to any claim of any wrongdoing, fault, liability, or damage whatsoever as Defendants specifically deny any wrongdoing. In further consideration of the global benefits that will be realized by settlement on behalf of the Parties and the Class, the Parties, and each of them, and Class Counsel believe and are satisfied that the terms and conditions of this Settlement Agreement are in all respects fair, reasonable, adequate and in

their respective best interests.

**Now, therefore, it is stipulated and agreed** by and among (i)
Plaintiffs/Putative Class Representatives, (ii) the Settlement Class, (iii) the
Maxwell Defendants, (iv) the Schreiber Defendants, (v) the Association
Defendants, and (vi), the Attorney Defendants by and through their respective
undersigned counsels, that, subject to the final approval of the Court, after
a hearing or hearings as provided for in this Settlement Agreement, in
consideration of the benefits flowing to each of the Parties from this Settlement
Agreement and for other good and valuable consideration, the respective receipt
and sufficiency of same are acknowledged by all Parties, that this Action and each
and all of the Class Released Claims and each and all of the Defendants' Released
Claims shall be fully and finally compromised, settled and released, and the
Action shall be dismissed with prejudice.

## Agreement
### 1.0   Acknowledgment and incorporation of recitals

The Parties, and each of them, acknowledge the truth and accuracy of each
of the above Recitals and incorporate each of the Recitals into this Agreement as
substantive terms.

## 2.0   Definitions

As used in this Settlement Agreement, the following terms have the meanings specified, below:

2.1      "**The Action**" means and refers to the lawsuit styled as "Class Action Complaint and Demand for Jury Trial – Injunctive Relief Sought" (Dkt. 1) brought by the Putative Class Members in the United States District Court for the Middle District of Florida, Tampa Division, Case No. 8:19-cv-029363-CEH-AAS.

2.2      "**Class Counsel**" refers to and means Daniel W. Perry, Esq.

2.3      "**Court**" refers to and means the United States District Court for the Middle District of Florida, Tampa Division, in which the Action has been filed and is pending and any judge of the Court to whom the Action is or may be assigned, including United States Magistrate Judges.

2.4      "**Defendants**" refers collectively to and means the Parties defined as "Defendants."

2.4.1   "**Maxwell Defendants**" refers collectively to and means Defendants Lawrence W. Maxwell, Century Realty Funds, Inc., CRF Management Co., Inc., And MX Communication Services, LLC;

2.4.2   "**Schreiber Defendants**" refers collectively to and means Mark E. Schreiber, David Scott Owens, Baytree Partners, LLC, And Century Residential, LLC.;

2.4.3   "**Association Defendants**" refers collectively to Vienna

Square Homeowners' Association, Inc. (individually referred to as "the HOA") and The Villas At Vienna Square Homeowners' Association, Inc. (individually referred to as "the Villas HOA");

        2.4.4 "**Attorney Defendants**" refers collectively to and means Ronald L. Clark, Craig B. Hill, And Clark, Campbell, Lancaster & Munson, P.A., f/k/a Clark, Campbell & Lancaster, P.A., f/k/a Clark, Campbell, Mawhinney & Lancaster, P.A., f/k/a Clark, Campbell & Mawhinney, P.A., f/k/a Clark & Campbell, P.A. and, as to the Clark Campbell Law Firm, and any and all attorneys now or ever employed by the Clark Campbell Law Firm.

    2.5    "**Effective date**" means the date when the Judgment has become final as provided in Section 2.6, below.

    2.6    "**Final**" means one business day following the later of the following events: (i) the date upon which the time expires for filing or noticing any appeal of the Court's Final Disposition (or howsoever the document may be captioned) finally approving the Settlement Agreement; (ii) if there is an appeal or appeals, the date of completion, in a manner that finally affirms and leaves in place the Judgment and without any material modification, of all proceedings arising out of the appeal or appeals (including, but not limited to, the expiration of all deadlines for motions for reconsideration or petitions for review and/or certiorari, all proceedings ordered on remand, and all proceedings arising out of any subsequent appeal or appeals following decisions on remand); or (iii) the date of

final dismissal of any appeal or the final dismissal of any proceeding on certiorari.

2.7 "**Final approval hearing**" means the hearing before the Court where the Plaintiffs and Defendants will request a Final Disposition be entered by the Court approving the Settlement Agreement.

2.8 "**Homeowners association documents**" means and refers to, collectively, the Master Declaration, as the Declaration has been amended through the Effective Date of this Settlement Agreement.

2.9 "**Vienna Square community**" refers to and means all real property comprising the Vienna Square development.

2.10 "**Notice**" means the publication and direct notice of this proposed Class Action Settlement Agreement and Final Approval Hearing, which Notice shall be served by Class Counsel in accordance with the requirements of due process and shall be substantially in the form set forth in this Agreement as Exhibit "1" (publication and direct notice), which exhibit is incorporated by this reference. Class Counsel shall bear all costs of mailing and publication expenses associated with the implementation of Notice to Class Members.

2.11 "**Notice date**" means the date by which the Notice Plan set forth in Section 2.12 is complete.

2.12 "**Notice plan**" means the plan developed by the Parties and Settlement Administrator, as approved by the Court in the Preliminary Approval Order, for disseminating Notice to members of the Settlement Class

of the proposed Settlement Agreement and of the Final Approval Hearing. Plaintiffs/Putative Class Representatives shall engage a third-party Settlement Administrator. The Settlement Administrator will, as part of the Notice Plan, implement both direct Notice and Publication Notice components to all identifiable Settlement Class members using the Court-approved Notice forms referenced in Section 2.10, above.

2.13    "**Opt-Out deadline**" means the date by which the election by a class member to "opt out" of the Settlement and Settlement Class must be postmarked and/or received by the Settlement Administrator, which shall be designated as a date approximately sixty days after the Notice Date, or such other date as may be ordered by the Court.

2.14    "**Parties**" means the Putative Class Representatives and the Settlement Class on the one hand, and Defendants on the other hand.

2.15    "**Person**" shall mean, without limitation, any individual, corporation, partnership, limited partnership, limited liability company, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency, and any business or legal entity and their spouses, immediate family members, heirs, predecessors, successors, representatives, or assigns. The definition of "Person" is not intended to include any governmental agencies or governmental actors, including, without limitation, any state Attorney General's office.

2.16   "**Putative class representatives**" refers collectively to the named Plaintiffs in the Action, excluding the deceased Plaintiff/Putative Class Representative Robert Schwegler.

2.17   "**Preliminary approval**" means the Court's certification of the Settlement Class for settlement purposes only, preliminary approval of the Settlement Agreement, and approval of the form of the Notice and of the Notice Plan.

2.17.1 "**Preliminary approval order**" means the proposed order preliminarily approving the Settlement Agreement and directing notice to the Settlement Class under to the Notices defined in this Settlement Agreement, which Notices were substantially in the forms of such Notices in this Agreement, and submitted to the Court in conjunction with Putative Class Representatives' and Defendants' "Motion for Preliminary Approval of Settlement Agreement".

2.18   "**Sales documents**" means and refers to those documents retained by the Parties but which are not attached to this filed Settlement Agreement.

2.19   "**Settlement agreement**" or "**agreement**" means the settlement contemplated by this Settlement Agreement.

2.20   "**Settlement administrator**" means, and subject to Court approval, who has been selected, and who shall be paid or reimbursed exclusively by Putative Class Representatives and Class Counsel, to oversee the transmittal of Notice, including Notice by Publication, as set forth below in Section 2.12 (Notice

Plan") above.

2.21   "**Settlement class**" means any and all Persons who formerly owned

or currently own, as of the date of this Agreement, any "Lot" or "Lots"[4] in the

Vienna Square Community, but does not include and specifically excludes any

and all of the Defendants and any entities owned, controlled or affiliated with

any of the Defendants. The term "own" as used in this Subsection means that the

Person was or is the owner of record of the Lot (or Lots) as shown in any form

of deed or conveyancing instrument duly recorded in the Public Records of Polk

County, Florida, whether or not that Person ever paid the System Assessment

or were ever subject to any other alleged actions by, or recipients of any alleged

communications from, any of the Defendants. The term "Settlement Class"

includes within it all Persons who are named Plaintiffs and Putative Class

Representatives in the Action. However, the Putative Class Representatives

shall be notified of this Settlement in writing by Class Counsel and shall not be

permitted to "opt out" of the Settlement Class. Proof of delivery and receipt of

Notice by Class Counsel to the Putative Class Representatives shall be filed with

the Court by Class Counsel in conjunction with the Parties' Joint Motion for

---

4       As set forth in Section 1.18 the Master Declaration: "Lot" means one (1) or more of the
platted portions of land into which the Community has been subdivided, upon each of which (i)
a single Living Unit has been or is intended to be constructed or located; or (ii) a multi-family
attached Living Unit (i.e., Living Units in the Villas) has been or is intended to be constructed or
located. Unless the context clearly requires a different interpretation, the term "Lot" shall
be interpreted as if it were followed by the words "and the Living Unit constructed thereon or
located thereon."

Preliminary Approval of the Settlement. All other members of the Settlement Class, shall be notified of the proposed Settlement under *Rule* 23(c)(2)(A), *Fed.R.Civ.P.*, and the Notice Plan, and such members will be permitted to "opt out" in the manner expressly specified in the Notice.

  2.21.1 The Term "**Settlement class**" does not include any attorneys of record for any of the Parties in the Action.

## 3.0 Settlement obligations of the parties

  3.1 *Stipulation to and certification of settlement class:* The Parties and each of them do not oppose, and stipulate to, the Court certifying a Settlement Class as defined. The Parties agree that Class Counsel shall file and litigate to conclusion the certification of the Settlement Class. The Defendants will not be obligated to pay for or otherwise reimburse Plaintiffs/Putative Class Representatives or Class Counsel for any attorney's fees or costs arising or incurred after November 18, 2020 or related to the litigation related to or arising from the formation and approval of the Settlement Class.

  3.2 *Attorney's fees*: The Parties agree and stipulate that Plaintiffs'/ Putative Class Representatives and Class Counsel are entitled to the payment of reasonable attorneys' fees, not to exceed $38,115.00, as set forth more fully below, through and including November 18, 2020.

  3.2.1 Attorneys for the Maxwell Defendants, the Schreiber Defendants and the Association Defendants have provided to Class Counsel legal

services invoices incurred by the aforementioned Defendants in defending the claims raised in the Action. All legal invoices were redacted for privilege, work product or other confidential materials. The Parties agree that no legal services invoices have been or will be submitted by any counsel who performed work which was for the benefit of the Attorney Defendants.

3.2.2   Class Counsel provided his legal invoices to counsel for the Maxwell Defendants and the Association Defendants. All legal invoices were redacted for privilege, work product or other confidential materials.

3.2.3   [This Section, previously presented in Dkt. 55-1 on June 11, 2021 has been stricken by agreement and stipulation of the Parties].

3.2.4   The Parties agree that the Attorney Defendants shall not be responsible for, nor pay any portion of, either Class Counsel's negotiated fee or any fees awarded to Class Counsel by the Court or any fees incurred by Class Counsel after November 18, 2020.

3.3     ***Audited financial statements:*** The Association Defendants shall provide Plaintiffs/Putative Class Representatives with audited financial statements for the HOA and the Villas HOA as follows: the 2019 audited financial statements will be provided by March 31st, 2021 and the 2020 audited financial statements shall also be provided by March 31, 2021. The Parties agree that the cost for the preparation of the audited financial statements will be an authorized expense of the Associations and will cost approximately $6,500.00 per financial

statement.

3.4   ***Assessment refunds:*** Assessment Refunds[5] will be paid by the Defendants, excluding the Attorney Defendants, to members of the Settlement Class who qualify for a refund. The qualifications for a refund shall be based on: the amount the Settlement Class Member household was charged by MX Communications and paid to MX Communications by the Settlement Class Member household for the MX Services, less the cost MX Communications paid for the bulk services. The Parties understand and agree that in no event will the total amount of all MX System Assessment Refunds paid hereunder to all Settlement Class Members who qualify for such refunds exceed $95,000.00 (Ninety-Five Thousand and no/100 Dollars.)[6] The Attorney Defendants shall not be responsible for any payment of the Assessment Refunds.

3.5   ***Repairs:***

3.5.1   Any repairs related to water damage, landscaping, pavers, or driveways in the Villas (townhomes) will be paid from the Villas HOA reserves/

---

5       Assessment Refunds shall mean a portion of the MX System Assessment (as defined in the Master Covenants at issue in the Complaint) which is being refunded to Plaintiffs and to the Settlement Class. The refund amount will vary between Class members based on a multiplicity of factors to include but not be limited to: ownership of the property, length of time that the System Assessment was charged, and the amount of the System Assessment charge.

6       The Plaintiffs/Class Representatives have been provided with the formula by which the Assessment Refund has been calculated as well as the Schreiber Defendants' best information as to the number of homeowners, together with addresses, to whom the Assessment Refund may arguably apply. No admission is made that all such individuals are indeed entitled to an Assessment Refund as such entitlement shall be determined as part of the Class Certification and settlement.

current cash balance.

       3.5.2   Any repairs related to water damage, pavers and driveways or landscaping problems with the single family homes will be made and paid by a special assessment by the HOA against the single family homeowners.

       3.5.3   The Plaintiffs/Putative Class Representatives and the Association Defendants agree that the expenses and payments described in Subsections 3.5.1 and 3.5.2, above, shall be considered and are, respectively, authorized expenses of the Villas HOA and the HOA.

       3.5.4   Clubhouse Repairs: The Association Defendants agree to perform repairs to the Clubhouse to update the Community clubhouse door and bathroom doors to current ADA standards. The costs associated with the repairs will be paid for as follows: one half of the cost of repairs will be paid for from the Villas HOA reserves/available cash balance; and, one half of the repairs will be paid for by a special assessment against the single family homes in the HOA. The Plaintiffs/ Putative Class Representatives and the Association Defendants agree that these expenses and payments for the aforementioned Clubhouse repairs shall be considered and are authorized expenses of the Associations Defendants.

    3.6   ***Robert Bame claim:*** The Defendants[7] have paid Plaintiff Robert Bame the sum of $9,000.00 in satisfaction of his individual claim arising out of a contention that certain memory care services were not available for his wife's

---

7     Excluding Attorney Defendants.

care. Without admitting any liability, the Defendants paid this money to buy their peace. As to the Bame claim, and in consideration of the accompanying payment, and other good and valuable consideration from all Defendants,[8] the receipt and sufficiency of which Plaintiff Robert Bame acknowledges for himself and all persons claiming or who could claim through him, fully and completely releases all Defendants (the Maxwell Defendants, the Schreiber Defendants, the Association Defendants, and the Attorney Defendants) from any and all demands, claims, actions, causes of action, and suits of any kind or nature whatsoever, whether in law or in equity, accrued and unaccrued, known and unknown, and from any and all damages of any kind or nature whatsoever, including, without limitation, compensatory, statutory, and punitive damages, arising out of services that were provided (or that Robert Bame contends were not provided) by any Defendant or Defendants related to nursing care, memory care, assisted living services, food delivery services or other such services. Additionally, Robert Bame agrees to satisfy all medical and/or wage liens, (whether known or unknown, contingent or fixed), arising out of in any way: Medicare, Medicaid, Social Security Disability payments, ERISA claims, insurance subrogation claims, deductibles, co-pays, hospital bills and/or physician bills. Robert Bame will defend and indemnify all Defendants from any such claims of lien.

---

8      Including the Attorney Defendants.

3.7     ***Settlement of additional damages claims:*** Some Plaintiffs/ Putative Class Members living in the Villas contend that they paid for repairs to their homes for water damage, paver repair, landscape repair or driveway repair that should have been paid by the Villas HOA. Each and every such potential claimant shall provide legible receipts for such claimed repairs, which receipts shall include sufficient specificity that the specific portion of the home being repaired is readily apparent from the face of the receipt. Such receipt shall represent work actually performed and paid for within the four (4) year period immediately preceding the filing of the lawsuit – i.e., from November 26, 2015 through November 26, 2019. Such receipts shall be submitted to Counsel Thomas C. Saunders, Esq., at his office address shown below on or before March 5, 2021 and failing such submission the claim shall not be paid hereunder. Defendant the Villas HOA shall reimburse the claimant for repairs to the claimants' home ***only*** if the repair was a repair for water damage, paver repair, landscape repair or driveway repair that was required to be made by the Villas HOA. Claimants shall be reimbursed for such repairs from the Villas HOA reserve fund up to a maximum of $5,000.00 per claimant and with an aggregate total of $35,000.00 for all such reimbursements from all claimants.

      3.7.1   If there are more valid claims for reimbursement that exceed the aggregate total of $35,000.00, then the valid claims for reimbursement shall be paid pro-rata. Furthermore, if the aggregate total of $35,000.00 is not

reached, and if an individual claimant had a valid claim for reimbursement that exceeded $5,000.00, then the difference between the actual valid claims for reimbursement actually paid and the aggregate amount of $35,000.00 shall be used to pay valid claims for reimbursement above $5,000.00, also on a pro-rata basis if required. To illustrate, and by way of example only:

> **Scenario 1:** The total number of valid claims for reimbursement total $35,000.00. The Maxwell Defendants shall pay that amount from Villas Reserves and no more claims for reimbursement shall be due and owing;

> **Scenario 2:** The total number of valid claims for reimbursement total $50,000.00. The Maxwell Defendants shall pay the aggregate amount of $35,000.00 on a pro-rata basis for each valid claim for reimbursement presented. In this example, each claimant would receive 70% of the amount of the valid claim presented. No further monies are owed.

> **Scenario 3:** The total number of claims paid is $30,000.00 but one claimant had a valid claim for reimbursement that totaled $6,000.00. This claimant (a fictional "Ms. Smith") was limited to $5,000.00. However, because the Maxwell Defendants had not reached the aggregate total of $35,000.00 and actually had $5,000.00 remaining of this aggregate total, Ms. Smith will receive the additional $1,000.00 of her claim. No further monies are owed.

> **Scenario 4:** The total number of claims is $30,000.00 but two of those claimants (fictional Ms. Smith and fictional Mr. Jones) each had valid claims for reimbursement of $15,000.00 each. Ms. Smith and Mr. Jones were each limited by the terms of this paragraph to $5,000.00 each. However, because the Maxwell Defendants had not reached the aggregate total of $35,000.00 and actually had $5,000.00 remaining of this aggregate total, Mr. Jones and Ms. Smith will divide on a pro-rate basis the remaining $5,000.00 (each will receive $2,500.00).

> **Scenario 5:** The total number of claims is $30,000.00 but two of

those claimants (fictional Ms. Smith and fictional Mr. Jones) each had valid claims for reimbursement of $10,000.00 and $15,000.00, respectively. Ms. Smith and Mr. Jones were each limited by the terms of this paragraph to $5,000.00 each. However, because the Maxwell Defendants had not reached the aggregate total of $35,000.00 and actually had $5,000.00 remaining of this aggregate total, Mr. Jones and Ms. Smith will divide on a pro-rate basis the remaining $5,000.00 (Ms. Smith will receive 1/3 and Mr. Jones will receive 2/3 of the remaining $5,000.00).

3.8     Nothing contained in Subsections 3.5, 3.6 or 3.7 shall be deemed to increase the repair or maintenance obligations of the Schreiber Defendants, or any of them, or the Association Defendants, or either of them, other than as may be set forth in the applicable Homeowners' Association Documents.[9]

3.9     [This Section, previously presented in Dkt. 55-1 on June 11, 2021 has been stricken by agreement and stipulation of the Parties].

3.10     ***Dismissal of the action:*** Upon the Court's final approval of the Settlement Agreement, the Parties, by and through their respective counsels, shall move to dismiss the Action. The proposed order of dismissal shall provide that dismissal of the Action shall be with prejudice and with no attorney's fees or court costs awarded or to be awarded to any party or parties other than as expressly agreed and set forth in this Agreement and approved by the Court. The Stipulated Motion for Dismissal of the Action, subject to the Court's approval, shall provide that the Court shall retain limited jurisdiction of the Action to enforce those terms of the Settlement Agreement that are to be performed by

---

9     The Association Defendants agree not to unreasonably withhold approval of a claim for reimbursement of either repair or reimbursement.

the Parties following the entry of Final Disposition. The Notice of Dismissal

shall be held in trust by Class Counsel and shall be filed by Class Counsel within

(one) business day following the entry of the Final Disposition in the Action.

The execution and filing of the Stipulated Motion for Dismissal by the Parties'

respective counsels shall be an unconditional, affirmative representation to all

other Parties and to the Court in the Action that each signing attorney has the

express, plenary and unqualified authority of his or their client or clients, as the

case may be, to execute and file the Stipulated Motion for Dismissal on behalf of

the party or parties named that he or she represents or they represent, and that

each and all of such Parties expressly and unconditionally agrees to be bound by

the terms of the Class Action Settlement Agreement entered into in the Action.

 3.11 ***Mutual releases:*** All Parties in the Action, together with their

respective counsels and other identified parties shall execute and forever be

bound by the Mutual Releases set forth in Section 5.0.

## 4.0 Settlement agreement conditions

 (a) This Settlement Agreement, in its entirety, is expressly conditioned

and contingent upon the Court's Final Approval of the Settlement Class and, after

a fairness hearing under to the requirements of *Rule* 23(e)(2), *Fed.R.Civ.P.*, entry

of a Final Disposition. To the extent the Court shall impose conditions upon the

Parties or upon the Settlement as a condition of Preliminary or Final Approval

and entry of Final Disposition, the Parties shall in good faith endeavor to make

such changes as may be required; provided, however, that in the event the Court declines to approve the mandatory Settlement Class at the Preliminary Approval stage, then this Settlement Agreement will be null and void *ab initio* regardless of whether the Court might approve all other provisions of this Agreement. In that event, all monies held in trust by the Clark Campbell Law Firm, if any, under this Agreement shall be returned to the Maxwell Defendants.

(b)     Notwithstanding the Court's Preliminary Approval of this Settlement Agreement or anything to the contrary, if more than five percent (5 %) of Settlement Class members who are permitted to opt out have timely opted out of the Settlement, then Defendants may, in their sole and absolute discretion, declare this Settlement null and void *ab initio* in its entirety, provided, however, that Defendants shall notify the Settlement Administrator, with contemporaneous copy to Class Counsel, of such election no later than three business days following Defendants' receipt of the Settlement Administrator's notice described in Subsection 3.1(b). In the event Defendants timely notify the Settlement Administrator and Class Counsel of their election to treat this Settlement void *ab initio*, all monetary consideration paid by the Maxwell Defendants and/or the Association Defendants held in trust by either Clark Campbell Law Firm or by Class Counsel, shall be immediately and fully refunded to the Defendants.

## 5.0   Mutual releases

Subject to each and every Party's full and timely completion, execution and performance of each and all of that Party's respective covenants and obligations as set forth in this Agreement:

### 5.1   *Plaintiffs'/putative class representatives' releases:*

Plaintiffs/Putative Class Representatives, all members of the Settlement Class (except those Persons who have opted out of the Settlement Class), and each of them, on behalf of themselves, and for any and all persons or entities claiming, or who could claim, by or through any or all of them (collectively, "Class Releasors") release, remise, discharge, and accord Defendants, and each of them, and each Defendant's past or present spouse, family members, heirs, personal representatives, estates, predecessor(s) in interest, successor(s) in interest, assigns, past and present affiliates, as the case may be, including, without limitation, parent companies and subsidiaries, including any dissolved or inactive entities (collectively, "Affiliates"), and each Defendant's past and present employees, agents, consultants, independent contractors, insurers, shareholders, directors, officers, managers, members, partners (limited and general), accountants, attorneys, financial and other advisors, Persons, and all Persons in which Defendants or any of them have or had a controlling interest or which are or were affiliated with any of them, or any other representatives of any of these Persons (collectively, "Defendant Releasees") from any and

all actual, potential, filed, known or unknown, fixed or contingent, claimed

or unclaimed, suspected or unsuspected, claims, demands, liabilities, rights,

causes of action, contracts or agreements, extra-contractual claims, damages,

punitive, exemplary or multiplied damages, expenses, costs, attorneys' fees

and or obligations, whether at law or in equity, whether accrued or unaccrued,

whether direct, individual or representative, of every kind, nature and description

whatsoever based upon any of the facts, documents, transactions or occurrences,

including any acts or omissions by any of the Defendants, alleged, or that should

or could have been alleged or asserted in the Action by any of the plaintiffs,

Plaintiff Releasors and/or any other person or persons whose claims are being

released hereunder, from the beginning of time, through and including the date

of entry of Final Disposition, arising out of, and including but not limited to:

the Homeowner Association Documents; the Sales Documents; 18 U.S.C. §§

1341 (mail fraud) and/or 1343 (wire fraud) and/or 1951 (extortion); the federal

Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §

1961, *et seq*., including any alleged violations of 18 U.S.C. §§ 1962(c) or (d); the

Communications Act of 1934, 47 U.S.C. § 151, *et seq*.; the 2007 FCC Exclusivity

Rule (MB Docket No.-7-51) adopted 10/31/2007); Chapter 720, *Fla. Stat.* (the

Florida Homeowners' Association Act, Chapter 720, parts I and II, including,

without limitation, any claimed violation of § 720.3075(1) through (5); the

Florida Deceptive and Unfair Trade Practices Act, § 501.201, *et seq*.; Chapter

760, *Fla. Stat.* ("the Florida Civil Rights Act"); the [Florida] Civil Remedies for Criminal Practices Act (a/k/a "Florida RICO"), § 772.101, *et seq*.; Sections 768.72, *Fla. Stat.* ("Punitive Damages") and 768.73 ("Punitive Damages; Limitations"); Chapter 812, *Fla. Stat.*; Chapter 825, *Fla. Stat.*, including, without limitation, any claimed violation of § 825.103, *Fla. Stat.* (exploitation of the elderly or disabled adult); any claimed violation of § 836.05, *Fla. Stat.* (extortion) and any federal, state or local laws, rules, regulations or ordinance promulgated under any of the aforementioned statutes, any claimed slander or defamation of title (collectively, "Class Released Claims"). The term "Class Released Claims" does not include any statutory or contractual rights or claims any of the Plaintiff Releasors have or may have against Mastercraft Homes, LLC, or any of its subcontractors, arising from the construction of any dwelling to the extent any such claims exist, any claims arising out of warranties of title, arising under any of the Sales Documents, and does not include any of the Defendants' or Defendant Releasors' covenants or obligations created by this Settlement Agreement.

      5.1.1   All Putative Class Representatives, members of the Settlement Class (except those Persons who have opted out of the Settlement Class and this Settlement), and each of them, affirmatively represent and warrant to all of the Defendant Releasees that none of Class Released Claims has been pledged, assigned, hypothecated or otherwise conveyed, in whole or in part, to any Person outside of the Settlement Class.

5.2    *Defendants' releases:* Defendants and Additional Defendant Releasing Parties,[10] and each of them, on behalf of themselves, and for any and all persons or entities claiming or who could claim by or through any or all of them ("Defendant Releasors") release, remise, discharge, and accord, each other (Defendants and Additional Defendant Releasing parties), Putative Class Representatives, and each of them, Class Counsel and as the case may be, each of their past or present spouses, family members, heirs, personal representatives, estates, successors, assigns, trusts, trustees, together with their respective past and present employees, agents, consultants, independent contractors, insurers, shareholders, directors, officers, managers, members, partners (limited and general), attorneys, financial and other advisors, Persons, and all Persons in which Putative Class Representatives or Class Counsel or any of them, have or had a controlling interest or which are or were affiliated with any of them, or any other representatives of any of these Persons (collectively, "Class Releasees") from any form of affirmative relief claimed in the Action; provided, however, Plaintiffs/Putative Class Representatives and Class Releasees, and each of them, are not released from any covenants or obligations created by this Settlement Agreement or from any covenants, conditions, restrictions or obligations under the Master Declaration, as amended. Furthermore, and notwithstanding anything

---

10    "Defendants and Additional Defendant Releasing Parties" refers to each and all of the Defendants named in the Action, including Defendants' attorneys of record in this Action, and includes all of their respective past and present officers, directors, employees, members, managers, heirs, personal representatives, successors and assigns, as the case may be.

to the contrary, no Person who has opted out of this Settlement shall be released

by Defendant Releasors from any claims whatsoever, all of which claims against

such Persons Defendants, and each of them fully reserve.

5.2.1  All Defendants and Additional Defendant Releasing Parties,

and each of them, affirmatively represent and warrant to all of the Class Releasees

and each of them, that none of Defendants' Released Claims has been pledged,

assigned, hypothecated or otherwise conveyed, in whole or in part, to any Person.

## 6.0   Miscellaneous

6.1   ***Agreement not to be used in subsequent proceedings:***

Neither this Agreement nor the settlement, nor any act performed or document

executed in furtherance of this Agreement or the settlement shall be pled

or used by any Party in any civil, criminal or administrative proceeding in

any court, administrative agency or other tribunal. However, the Settlement

Agreement and this Agreement, and any acts performed and/or documents

executed in furtherance of this Agreement and/ or Settlement may be used in any

proceedings as may be necessary to effectuate the provisions of this Agreement.

However, if this Settlement Agreement is approved by the Court, any party or any

of the Persons released may file this Settlement Agreement and/or the Judgment

or Order of Dismissal filed in the Action in any action that may be brought

against such party or Parties in order to support a defense or counterclaim based

on principles of res judicata, collateral estoppel, release, good faith settlement,

judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

6.2    ***Approved extensions:*** The Parties may agree, subject to the approval of the Court where required, to reasonable extensions of time to carry out the provisions of the Agreement and effectuate its purposes.

6.3    ***Authority:*** Every Party and every Counsel signing this Agreement on behalf of any Party or Parties affirmatively represents to every other Party and Counsel: (i) that each of the signatory entities shown below is authorized by its respective directors, general partner, member or members, as the case may be, to enter into this Agreement, to be fully and legally bound and that the undersigned signatory on behalf of any entity is authorized to execute this Agreement on its behalf; (ii) that every individual signatory below, including each signatory signing on behalf of an entity, is over the age of 18 years, is sui juris and not under any disability, and is competent to contract; that every Counsel signing on behalf of a Party or Parties has the express, full, and unconditional authority to sign this Agreement on behalf of and bind that Party or Parties. The Parties agree that a copy of this Agreement, executed with blue or black ink signatures by all Counsels, by all Putative Class Representatives and by all Defendants shall be submitted to the Court with the Joint Motion for Preliminary Approval.

6.4    ***Binding on successors:*** All of the terms and provisions of this Agreement shall inure to the benefit of and shall bind upon each of the Parties

and each of their respective heirs, successors and assigns, if any, and each and all of the Parties' respective spouses, heirs, personal representatives, successors, and assigns, as the case may be, and each and all of the Plaintiff Releasees and Defendant Releasees.

6.5 ***Captions and headings:*** The captions or headings are used for the purpose of convenience only and are not to be considered as substantive terms of this Agreement or are otherwise meant to have legal effect.

6.6 ***Counterparts:*** This Agreement may be executed in one or more counterparts exchanged by hand, messenger, facsimile, or PDF as an electronic mail attachment. All executed counterparts and each of them shall be deemed to be one and the same instrument provided that counsel for the Parties to this Agreement all exchange signed counterparts. A complete set of original executed counterparts shall be filed with the Court if the Court so requests.

6.7 ***Entire agreement; no inducements other than as stated in agreement***: Subject to the Preliminary Approval of the Court, this Agreement and its Exhibit constitutes the full and complete expression of the Parties' settlement agreement and supersedes any and all prior agreements, written or verbal, and supersedes any contemporaneous verbal agreements. There shall be no modification, alterations, or amendment or changes of or to the terms of this Agreement (collectively, "amendments") except to the extent such amendments may be required by the Court as a condition of Preliminary Approval or entry

of Final Disposition and such amendments are set forth in writing signed by all Parties or their respective duly authorized agents or counsels. Each party warrants and represents that no representations, warranties or inducements have been made to any Party concerning this Settlement Agreement or its Exhibit other than the representations, warranties and covenants contained and memorialized in such documents. This Settlement Agreement is deemed to have been prepared by counsels for all Parties, as a result of arms-length negotiations among the Parties. Whereas all Parties have contributed substantially and materially to the preparation of this Agreement, therefore it shall not be construed more strictly against one party than another.

6.8   ***Exhibit part of agreement:*** Exhibit 1 (direct and publication notice) is a material, substantive and integral part and is fully incorporated by this reference.

6.9   ***Fees and costs:*** Except as otherwise provided, each party shall bear its own attorney's fees and costs.

6.10   ***Governing law:*** This Agreement shall be governed by Florida law, without regard for that State's choice of law or conflict of laws rules, by any and all applicable provisions of the *Federal Rules of Civil Procedure* and federal laws applicable to the settlement of class actions.

6.11   ***Non-admissibility:*** Under *Federal Rule of Evidence* 408 and any applicable state or local rules of evidence, this Settlement Agreement and any

related documents filed or created in connection with it shall be inadmissible in evidence in any proceeding, except as necessary to approve, interpret, or enforce this Agreement.

6.12  ***No press or media releases; limited authorized disclosure:*** The Parties and their counsel agree that they will not issue any press or media releases concerning this Settlement Agreement or the resolution of the Action. Notwithstanding this provision, Defendant Releasees shall be permitted to reference this settlement in compliance-related communications, including, without limitation, as required by statute or administrative rule, in communications with lenders and insurers.

6.13  ***Notices:*** Unless otherwise stated, any notice required or provided for under this Agreement shall be in writing and shall be sent by electronic mail, overnight courier, or hand delivery, postage prepaid, as follows:

### *If to Plaintiffs/putative class representatives or class counsel:*

> c/o Daniel W. Perry, Esq.,
> 4767 New Broad Street # 1007
> Orlando, FL 32814

### *If to Maxwell defendants:*

> c/o Joseph A. Geary, Esq.
> Clark, Campbell, Lancaster & Munson, P.A.
> 500 South Florida Avenue, # 800
> Lakeland, FL 33801

**with copy to:**

> Thomas C. Saunders, Esq,
> Saunders Law Group
> 480 Broadway Avenue
> Bartow, FL 33830

**If to Schreiber defendants and/or Association defendants:**

> c/o Thomas C. Saunders, Esq,
> Saunders Law Group
> 480 Broadway Avenue
> Bartow, FL 33830

**If to Attorney defendants:**

> c/o Marjorie S. Hensel, Esq.
> Bush | Ross
> 1801 N. Highland Avenue
> Tampa, FL 33602

**With copy to:**

> Joseph A. Geary, Esq.
> Clark, Campbell, Lancaster & Munson, P.A.
> 500 South Florida Avenue, # 800
> Lakeland, FL 33801

6.14   **Parties' intention to consummate settlement agreement and assurances of cooperation:** The Parties (a) acknowledge that it is their intent to consummate this Settlement Agreement; and (b) agree, subject to their fiduciary and other legal obligations, to cooperate to the extent necessary or as may be required by to the Court to effectuate and implement all terms and conditions of this Agreement to accomplish the foregoing terms and conditions of this Agreement. Class Counsel and Defendants' Counsels agree to cooperate

with one another in seeking Court approval of the Preliminary Approval Order, the Settlement Agreement, and the Judgment, and promptly to agree upon and execute all such other documentation as may be reasonably required to obtain final approval of the Settlement Agreement.

6.15   ***Reliance on advice of counsel and understanding of agreement:*** The Parties have relied upon the advice and representation of their respective counsels, selected by them, concerning their respective rights and obligations with respect to this Settlement Agreement and any and all claims released. The Parties affirmatively represent that they have each read and understand fully the above and foregoing Settlement Agreement and each and every part of it and have been fully advised as to the legal effect by counsel of their own selection and intend to be legally bound by the same.

6.16   ***Retention of jurisdiction:*** The Parties agree that the Court, subject to its approval, shall retain jurisdiction of the Action with respect to, and to the extent necessary for, the full implementation and enforcement of the terms of this Agreement; therefore, all Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in this Agreement.

6.17   ***Settlement agreement as full, final and complete resolution:*** The Parties intend this Settlement Agreement to be a full, final and complete resolution of all disputes between them with respect to Plaintiffs'

Released Claims, on the one hand, and the Defendants' Released Claims, on the other hand, and this Settlement Agreement shall be a complete and absolute defense to any claims released that may be brought in any subsequent litigation.

6.18   ***Understanding of the agreement:*** Each and every Party signing this Agreement affirmatively represents to each and every other party signing this Agreement and to the Court that: (i) that Party has carefully reviewed each and every term and provision of this Agreement, individually, and with their respective legal counsels or tax advisors of their own choosing; (ii) that Party understands, approves of and agrees to each and every term of this Agreement; (iii) that Party enters into this Agreement of his or its own free and voluntary act and will and that there has been no threat or coercion, or promise of any other consideration that has caused any Party to enter into this Agreement. Accordingly, this Agreement shall be construed as having been drafted by all Parties and shall not be construed more or less favorably to any Party or Parties.

6.19   ***Waiver:*** The waiver by one Party of any breach of this Agreement by any other Party shall not be deemed as a waiver of any other prior or subsequent breaches of this Agreement.

6.20   ***Opt-out settlement class members not third-party beneficiaries:*** Any Persons who have opted out of the Settlement Class and this Agreement, shall not be third-party beneficiaries of this Agreement or entitled to enforce any of its terms except and only to the extent expressly provided. This

Agreement does not operate to extend, modify or otherwise affect any statute of limitations time periods to defenses as they may relate to any persons who opt out of the Settlement Class and this Agreement.

**We witness**, as set forth and previously presented in Dkt. 55-1 on June 11, 2021.

/s/Thomas C. Saunders  **\*\*AS TO FORM ONLY \*\***
_____
Thomas C. Saunders, Esq.
Saunders Law Group, P.A.
 Co-Counsel for Defendants Lawrence W. Maxwell, Century Realty Funds,
 Inc., CRF Management Co., Inc., MX Communication Services, LLC,
 Century Residential, LLC, and Counsel for Mark E. Schreiber, David Scott
 Owens, Baytree Partners, LLC, Vienna Square Homeowners' Association,
 Inc., and The Villas at Vienna Square Homeowners' Association, Inc.

/s/Marjorie S./ Hensel  **\*\*AS TO FORM ONLY \*\***
_____
Marjorie S. Hensel, Esq.
Bush | Ross, P.A.
 Counsel for Defendants Ronald L. Clark , Craig B. Hill and Clark, Campbell,
 Lancaster & Munson, P.A., f/k/a Clark, Campbell & Lancaster, P.A., f/k/a
 Clark, Campbell, Mawhinney & Lancaster, P.A., f/k/a Clark, Campbell &
 Mawhinney, P.A., f/k/a Clark & Campbell, P.A.,

/s/Joseph A. Geary  **\*\*AS TO FORM ONLY \*\***
_____
Joseph A. Geary, Esq.,
Clark, Campbell, Lancaster & Munson, P.A.
 Co-Counsel for Defendants Lawrence W. Maxwell, Century Realty Funds,
 Inc., CRF Management Co., Inc., MX Communication Services, LLC,
 Century Residential, LLC

Class Action Settlement Agreement - Case No. 8:19-cv-02936-CEH-AAS

[Facsimile signature on file]

_____

LAWRENCE W. MAXWELL,
Defendant

[Facsimile signature on file]

_____

MARK SCHREIBER,
Defendant

[Facsimile signature on file]

_____

DAVID SCOTT OWENS
Defendant

[Facsimile signature of agent on file]

_____

CENTURY REALTY FUNDS, INC.,
Defendant
By: _____
As its: _____

[Facsimile signature of agent on file]

_____

MX COMMUNICATION SERVICES, LLC,
Defendant
By: _____
As its: _____

[Facsimile signature of agent on file]

_____

CENTURY RESIDENTIAL, LLC,
Defendant
By: _____
As its: _____

[Facsimile signature of agent on file]
_____
BAYTREE PARTNERS, LLC
Defendant
By: _____
As its: _____


[Facsimile signature of agent on file]
_____
VIENNA SQUARE HOMEOWNERS' ASSOCIATION, INC.

By: _____
As its: _____


[Facsimile signature of agent on file]
_____
THE VILLAS AT VIENNA SQUARE
 HOMEOWNERS' ASSOCIATION, INC.,

By: _____
As its: _____


[Facsimile signature on file]
_____
RONALD L. CLARK,
Defendant


[Facsimile signature on file]
_____
CRAIG B. HILL
Defendant


[Facsimile signature of agent on file]
_____
CLARK, CAMPBELL, LANCASTER & MUNSON,
P.A., f/k/a Clark, Campbell & Lancaster, P.A., f/k/a Clark, Campbell, Mawhinney

& Lancaster, P.A., f/k/a Clark, Campbell & Mawhinney, P.A., f/k/a Clark &
Campbell, P.A.

By: _____
Michael E. Workman
As its: Vice President/Secretary


[Facsimile signature on file]
_____
STEPHEN BALOGA


[Facsimile signature on file]
_____
ROBERT BAME


[Facsimile signature on file]
_____
JAMES R. CAMPBELL


[Facsimile signature on file]
_____
JAMES CAMPBELL


[Facsimile signature on file]
_____
LINDA DAVY


[Facsimile signature on file]
_____
GERALD KRUITHOFF


[Facsimile signature on file]
_____
RICHARD MANSFIELD

Class Action Settlement Agreement - Case No. 8:19-cv-02936-CEH-AAS

[Facsimile signature on file]

_____

JANE PETERSEN


[Facsimile signature on file]

_____

JAMES ROTTER


[Facsimile signature on file]

_____

ROBERT TATTERSALL


[Facsimile signature on file]

_____

KATHERINE WIMER


/s/Daniel W. Perry  **AS TO FORM ONLY** **

_____

DANIEL W. PERRY, ESQ.