IN THE UNITED STATES DISTRICT
COURT FOR THE MIDDLE DISTRICT OF
FLORIDA, TAMPA DIVISION

STEPHEN BALOGA, ROBERT
BAME, et al.,

    Plaintiffs,

Vs.

LAWRENCE W. MAXWELL,
et al.,

    Defendants.

_____/

Case No. 8:19-cv-02936-CEH-AAS

**FINAL ORDER AND JUDGMENT**

On July 20, 2022, this Court granted (Doc. 94) Plaintiffs' Unopposed Third Amended Motion for Final Approval of the Class Action Settlement (Doc. 89) and Plaintiffs' Unopposed Amended Motion for Attorneys' Fees and Expenses (Doc. 90). Pursuant to Rule 23 of the Federal Rules of Civil Procedure, this Court conducted a Final Fairness Hearing on July 20, 2022, and for the reasons stated herein and at the hearing, the Court enters this Final Order and Judgment.

**I.**    **The Litigation and Settlement Agreement**

This class action involves the principal claims of: a) the inclusion by the Defendants of allegedly illegal clauses in the homeowner association governing documents causing subdivision homeowners to be charged "system assessment fees" for cable television and security monitoring; and b) homeowners who relied upon representations by the Developer Defendants that the property would be a continuing care campus or that their property would be maintenance or worry free.

Plaintiffs assert the illegal clauses in the homeowner association governing documents, the "system assessment fees," and the "continuing care campus" or "maintenance or worry free" representations violate both the federal Racketeer Influenced and Corrupt Organization ("RICO") statute, 18 U.S.C. § 1961, *et seq.*, and the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Part II, Chapter 501, *Fla. Stat.*

Defendants deny any fault, wrongdoing, or liability to the Settlement Class Members for any relief. After engaging in discovery, the Parties attended mediation where they reached a class-wide settlement subject to court approval.

On February 7, 2022, the Court granted the parties' Amended Joint Motion for Preliminary Approval of Class Action Settlement (Doc. 64) and certified the following class for settlement purposes:

> 2.21 "Settlement Class" means Persons who owned or formerly owned any property in Vienna Square during the time period from November 27, 2015 to June 11, 2021 who were subject to a system assessment and who relied on representations by the Developer Defendants that the property would be a continuing care campus or that their property would be maintenance or worry free. The term "Settlement Class" does not include, and specifically excludes (i) any and all of the Defendants and any entities owned, controlled or affiliated with any of the Defendants, and (ii) any attorneys of record for any of the Parties in the Action.

(Doc. 72, restating Section 2.21 of the Settlement Agreement at Doc. 69).

On July 20, 2022, at the Fairness Hearing, among other things, the Court determined that the Settlement Class satisfied the requirements of numerosity, commonality, typicality, adequacy, predominance and superiority.

On July 20, 2022, the Court also granted the Parties' request for final approval of

their settlement agreement (Doc. 69). Section 3 of the settlement agreement requires the following (reproduced verbatim):

*****

### 3.0  Settlement obligations of the parties

3.1  *Stipulation to and certification of settlement class:* The Parties and each of them do not oppose, and stipulate to, the Court certifying a Settlement Class as defined. The Parties agree that Class Counsel shall file and litigate to conclusion the certification of the Settlement Class. The Defendants will not be obligated to pay for or otherwise reimburse Plaintiffs/ Putative Class Representatives or Class Counsel for any attorney's fees or costs arising or incurred after November 18, 2020 or related to the litigation related to or arising from the formation and approval of the Settlement Class.

3.2  *Attorney's fees:* The Parties agree and stipulate that Plaintiffs'/ Putative Class Representatives and Class Counsel are entitled to the payment of reasonable attorneys' fees, not to exceed $38,115.00, as set forth more fully below, through and including November 18, 2020.

    3.2.1  Attorneys for the Maxwell Defendants, the Schreiber Defendants and the Association Defendants have provided to Class Counsel legal services invoices incurred by the aforementioned Defendants in defending the claims raised in the Action. All legal invoices were redacted for privilege, work product or other confidential materials. The Parties agree that no legal services invoices have been or will be submitted by any counsel who performed work which was for the benefit of the Attorney Defendants.

    3.2.2  Class Counsel provided his legal invoices to counsel for the Maxwell Defendants and the Association Defendants. All legal invoices were redacted for privilege, work product or other confidential materials.

    3.2.3  [This Section, previously presented in Doc. 55-1 on June 11, 2021 has been stricken by agreement and stipulation of the Parties].

       3.2.4  The Parties agree that the Attorney Defendants shall not be responsible for, nor pay any portion of, either Class Counsel's negotiated fee or any fees awarded to Class Counsel by the Court or any fees incurred by Class Counsel after November 18, 2020.

  3.3  *Audited financial statements:* The Association Defendants shall provide Plaintiffs/Putative Class Representatives with audited financial statements for the HOA and the Villas HOA as follows: the 2019 audited financial statements will be provided by March 31st, 2021 and the 2020 audited financial statements shall also be provided by March 31, 2021. The Parties agree that the cost for the preparation of the audited financial statements will be an authorized expense of the Associations and will cost approximately $6,500.00 per financial statement.

  3.4  *Assessment refunds:* Assessment Refunds[1] will be paid by the Defendants, excluding the Attorney Defendants, to members of the Settlement Class who qualify for a refund. The qualifications for a refund shall be based on: the amount the Settlement Class Member household was charged by MX Communications and paid to MX Communications by the Settlement Class Member household for the MX Services, less the cost MX Communications paid for the bulk services. The Parties understand and agree that in no event will the total amount of all MX System Assessment Refunds paid hereunder to all Settlement Class Members who qualify for such refunds exceed $95,000.00 (Ninety-Five Thousand and no/100 Dollars.)[2] The Attorney Defendants shall not be responsible for any payment of the Assessment Refunds.

---

[1] Assessment Refunds shall mean a portion of the MX System Assessment (as defined in the Master Covenants at issue in the Complaint) which is being refunded to Plaintiffs and to the Settlement Class. The refund amount will vary between Class members based on a multiplicity of factors to include but not be limited to: ownership of the property, length of time that the System Assessment was charged, and the amount of the System Assessment charge

[2] The Plaintiffs/Class Representatives have been provided with the formula by which the Assessment Refund has been calculated as well as the Schreiber Defendants' best information as to the number of homeowners, together with addresses, to whom the Assessment Refund may arguably apply. No admission is made that all such individuals are indeed entitled to an Assessment Refund as such entitlement shall be determined as part of the Class Certification and settlement.

    3.5    *Repairs:*

        3.5.1  Any repairs related to water damage, landscaping, pavers, or driveways in the Villas (townhomes) will be paid from the Villas HOA reserves/ current cash balance.

        3.5.2  Any repairs related to water damage, pavers and driveways or landscaping problems with the single family homes will be made and paid by a special assessment by the HOA against the single family homeowners.

        3.5.3  The Plaintiffs/Putative Class Representatives and the Association Defendants agree that the expenses and payments described in Subsections 3.5.1 and 3.5.2, above, shall be considered and are, respectively, authorized expenses of the Villas HOA and the HOA.

        3.5.4  Clubhouse Repairs: The Association Defendants agree to perform repairs to the Clubhouse to update the Community clubhouse door and bathroom doors to current ADA standards. The costs associated with the repairs will be paid for as follows: one half of the cost of repairs will be paid for from the Villas HOA reserves/ available cash balance; and, one half of the repairs will be paid for by a special assessment against the single family homes in the HOA. The Plaintiffs/ Putative Class Representatives and the Association Defendants agree that these expenses and payments for the aforementioned Clubhouse repairs shall be considered and are authorized expenses of the Associations Defendants.

    3.6    *Robert Bame claim*: The Defendants[3] have paid Plaintiff Robert Bame the sum of $9,000.00 in satisfaction of his individual claim arising out of a contention that certain memory care services were not available for his wife's care. Without admitting any liability, the Defendants paid this money to buy their peace. As to the Bame claim, and in consideration of the accompanying payment, and other good and valuable consideration from all Defendants,[4] the receipt and sufficiency of which Plaintiff Robert Bame acknowledges for himself and all persons claiming or who could claim through him, fully and completely releases all Defendants (the Maxwell Defendants, the Schreiber Defendants, the Association Defendants, and the Attorney Defendants) from any and all demands, claims,

---

3    Excluding Attorney Defendants.
4    Including the Attorney Defendants.

actions, causes of action, and suits of any kind or nature whatsoever, whether in law or in equity, accrued and unaccrued, known and unknown, and from any and all damages of any kind or nature whatsoever, including, without limitation, compensatory, statutory, and punitive damages, arising out of services that were provided (or that Robert Bame contends were not provided) by any Defendant or Defendants related to nursing care, memory care, assisted living services, food delivery services or other such services. Additionally, Robert Bame agrees to satisfy all medical and/or wage liens, (whether known or unknown, contingent or fixed), arising out of in any way: Medicare, Medicaid, Social Security Disability payments, ERISA claims, insurance subrogation claims, deductibles, co-pays, hospital bills and/or physician bills. Robert Bame will defend and indemnify all Defendants from any such claims of lien.

3.7   *Settlement of additional damages claims:* Some Plaintiffs/ Putative Class Members living in the Villas contend that they paid for repairs to their homes for water damage, paver repair, landscape repair or driveway repair that should have been paid by the Villas HOA. Each and every such potential claimant shall provide legible receipts for such claimed repairs, which receipts shall include sufficient specificity that the specific portion of the home being repaired is readily apparent from the face of the receipt. Such receipt shall represent work actually performed and paid for within the four (4) year period immediately preceding the filing of the lawsuit – i.e., from November 26, 2015 through November 26, 2019. Such receipts shall be submitted to Counsel Thomas C. Saunders, Esq., at his office address shown below on or before March 5, 2021 and failing such submission the claim shall not be paid hereunder. Defendant the Villas HOA shall reimburse the claimant for repairs to the claimants' home only if the repair was a repair for water damage, paver repair, landscape repair or driveway repair that was required to be made by the Villas HOA. Claimants shall be reimbursed for such repairs from the Villas HOA reserve fund up to a maximum of $5,000.00 per claimant and with an aggregate total of $35,000.00 for all such reimbursements from all claimants.

   3.7.1  If there are more valid claims for reimbursement that exceed the aggregate total of $35,000.00, then the valid claims for reimbursement shall be paid pro-rata. Furthermore, if the aggregate total of $35,000.00 is not reached, and if an individual claimant had a valid claim for reimbursement that exceeded $5,000.00, then the difference between the actual valid claims for

reimbursement actually paid and the aggregate amount of $35,000.00 shall be used to pay valid claims for reimbursement above $5,000.00, also on a pro-rata basis if required. To illustrate, and by way of example only:

Scenario 1: The total number of valid claims for reimbursement total $35,000.00. The Maxwell Defendants shall pay that amount from Villas Reserves and no more claims for reimbursement shall be due and owing;

Scenario 2: The total number of valid claims for reimbursement total $50,000.00. The Maxwell Defendants shall pay the aggregate amount of $35,000.00 on a pro-rata basis for each valid claim for reimbursement presented. In this example, each claimant would receive 70% of the amount of the valid claim presented. No further monies are owed.

Scenario 3: The total number of claims paid is $30,000.00 but one claimant had a valid claim for reimbursement that totaled $6,000.00. This claimant (a fictional "Ms. Smith") was limited to $5,000.00. However, because the Maxwell Defendants had not reached the aggregate total of $35,000.00 and actually had $5,000.00 remaining of this aggregate total, Ms. Smith will receive the additional $1,000.00 of her claim. No further monies are owed.

Scenario 4: The total number of claims is $30,000.00 but two of those claimants (fictional Ms. Smith and fictional Mr. Jones) each had valid claims for reimbursement of $15,000.00 each. Ms. Smith and Mr. Jones were each limited by the terms of this paragraph to $5,000.00 each. However, because the Maxwell Defendants had not reached the aggregate total of $35,000.00 and actually had $5,000.00 remaining of this aggregate total, Mr. Jones and Ms. Smith will divide on a pro-rate basis the remaining $5,000.00 (each will receive $2,500.00).

        Scenario 5:  The total number of claims is $30,000.00 but two of those claimants (fictional Ms. Smith and fictional Mr. Jones) each had valid claims for reimbursement of $10,000.00 and $15,000.00, respectively. Ms. Smith and Mr. Jones were each limited by the terms of this paragraph to $5,000.00 each. However, because the Maxwell Defendants had not reached the aggregate total of $35,000.00 and actually had $5,000.00 remaining of this aggregate total, Mr. Jones and Ms. Smith will divide on a pro-rate basis the remaining $5,000.00 (Ms. Smith will receive 1/3 and Mr. Jones will receive 2/3 of the remaining $5,000.00).

3.8    Nothing contained in Subsections 3.5, 3.6 or 3.7 shall be deemed to increase the repair or maintenance obligations of the Schreiber Defendants, or any of them, or the Association Defendants, or either of them, other than as may be set forth in the applicable Homeowners' Association Documents.[5]

3.9    [This Section, previously presented in Doc. 55-1 on June 11, 2021 has been stricken by agreement and stipulation of the Parties].

3.10    *Dismissal of the action:* Upon the Court's final approval of the Settlement Agreement, the Parties, by and through their respective counsels, shall move to dismiss the Action. The proposed order of dismissal shall provide that dismissal of the Action shall be with prejudice and with no attorney's fees or court costs awarded or to be awarded to any party or parties other than as expressly agreed and set forth in this Agreement and approved by the Court. The Disposition in the Action. The execution and Stipulated Motion for Dismissal of the Action, subject to the Court's approval, shall provide that the Court shall retain limited jurisdiction of the Action to enforce those terms of the Settlement Agreement

---

5. The Association Defendants agree not to unreasonably withhold approval of a claim for reimbursement of either repair or reimbursement.

> that are to be performed by the Parties following the entry of Final Disposition. The Notice of Dismissal shall be held in trust by Class Counsel and shall be filed by Class Counsel within (one) business day following the entry of the Final
>
> filing of the Stipulated Motion for Dismissal by the Parties' respective counsels shall be an unconditional, affirmative representation to all other Parties and to the Court in the Action that each signing attorney has the express, plenary and unqualified authority of his or their client or clients, as the case may be, to execute and file the Stipulated Motion for Dismissal on behalf of the party or parties named that he or she represents or they represent, and that each and all of such Parties expressly and unconditionally agrees to be bound by the terms of the Class Action Settlement Agreement entered into in the Action.

(Doc. 69).

In so ordering, the Court found that the proposed settlement is fair, reasonable, adequate, and in the best interest of the Class Members, especially in light of the benefits to the Class members; the strength of Plaintiffs' case; the complexity, expense, and probable duration of further litigation; the amount of discovery engaged in by the parties; the risk and delay inherent in possible appeals; and the opinions of Class Counsel. *See Leverso v. SouthTrust Bank of AL., N.A.*, 18 F.3d 1527, 1530 (11th Cir. 1994).

The Court approved notice to the class by United States mail and with weblink online resources. The Settlement Administrator timely mailed the approved Class Notice and sent it electronically thereafter to those Class Members who provided their e-mail addresses. *See* Declaration of Class Administrator, attached to Plaintiffs' Unopposed Third Amended Motion for Final Approval of the Class Action Settlement (Doc. 89-1 and 74-1). Accordingly, the Court finds the class notification was properly effectuated.

In preliminarily approving the settlement, the Court established a deadline of May 11, 2022 for any members of the Classes to opt out or object to the settlement. (Doc. 72) None of the Class Members opted out or filed an objection. The low opt-out and objection rates weigh in favor of granting final approval of the settlement. *See, e.g., Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 694 (S.D. Fla. 2014).

## II. Attorneys' Fees and Expenses

When the Court preliminarily approved the settlement, it preliminarily approved the parties' stipulated agreement to pay fees at $38,115.00 as requested in Plaintiffs' unopposed amended motion for attorneys' fees and expense, but indicated the final fee award was subject to the Court's approval. With Plaintiffs' Unopposed Amended Motion for Attorneys' Fees and Expenses (Doc. 90), Class Counsel provided documentation supporting their request for fees and expenses in the total amount of $38,115.00. The Court has reviewed the Motion and supporting documents and finds that the request is reasonable.

## III. Final Approval

A district court's adoption of a class action settlement is governed by Federal Rule of Civil Procedure 23(e). That rule requires that the settlement be "fair, reasonable and adequate." The Court, being fully advised of the premises, hereby Orders:

1. The settlement was entered into by the Parties for the purpose of settling and compromising disputed claims and does not constitute an admission by the parties hereto of any wrongdoing or liability.

2. The provisions for notice to the Class satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process.

3. The settlement is fair, reasonable, and adequate, and in the best interest of all those affected by it. The Court hereby approves the Class Action Settlement Agreement.

4. The Class defined above is **CERTIFIED**.

5. Any amounts of the settlement fund remaining in the escrow account of Class Counsel, Daniel W. Perry, Esq., 200 days after Class Counsel distributes all of the checks required to be distributed in accordance with the settlement agreement, (Doc. 69), shall be paid as a donation to the *cy pres* recipient: Bay Area Legal Services Inc., 1302 N. 19th Street, Suite 400, Tampa, Florida 33605- 5230. Bay Area Legal Services Inc., is an entity "dedicated to providing free civil legal services to qualified and low-income residents and nonprofits throughout the Tampa Bay area." *See* https://www.bals.org/. Class Counsel shall file a notice of remittance of the *cy pres* funds to the Court within 14 days of such remittance.

6. The Court retains jurisdiction over the interpretation, enforcement, and implementation of the Class Action Settlement Agreement and of this Final Order and Judgment for a period of one year.

7. Upon entry of this Final Order and Judgment all Parties in the Action, together with their respective counsel and other identified parties have executed and are therefore forever bound by the Mutual Releases set forth in Section 5.0 (including subparts) of the Class Action Settlement Agreement (Doc 69).

8. This case is hereby dismissed with prejudice. The Clerk of Court is directed to **CLOSE** this case.

**DONE AND ORDERED** in Tampa, Florida on September 21, 2022.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record
Unrepresented parties, if any